Judge Mills
delivered the opinion of the court.
This is a bill filed by Kendall the appellee, to sustain and establish an entry therein set forth, against Gabriel May, in his life time, who claimed under an elder entry and patent. Pending the suit, and after May answered, he died, and the suit was revived by order to that effect, and progressed to a final decree. As the suit progressed. Newman presented to the court an answer, alledging that he held the equitable title by purchase and written contract with May in his lifetime, and the possession of the land under the purchase for upwards of twenty years before the commencement of the suit, on which, as well as other things, he relies in bar of the relief prayed in the bill; and thereupon, “on his motion, he is admitted defendant therein."
The court on, hearing, sustained the complainant’s entry, and decreed to him the conveyance and possession of a large portion of the land in controversy; to reverse which, this writ of error is prosecuted—and the errors assigned question the regularity of the proceedings, as well as the merits of the decree. The first questions such title in the complainant as would authorise him to sustain the bill. This, in part, appears to be well founded. The entry and patent under which he claims, is in the name of Ray, who, by one conveyance, vested the complainant with an undivided moiety of the land; and by a second conveyance, released to him all his interest in one half by metes and bounds. Thus the complainant is invested with a title in severalty to one half, a joint title with Ray as tenant in common for the other half. Although this might have enabled Ray and the complainant to maintain a joint title for *235 the half undivided, and the complainant himself a separate bill for the parts in which he has an entire estate—or it might have authorised Ray and the complainant to unite in one bill, complaining on charge of the complainant himself for that half in which Ray’s title was extinguished, and for the other half by joint complaint of both; yet it could not authorise the complainant to sustain his bill, not only for the part held in severalty, but also for the joint and individual half, as he has done. Unless, therefore, he should, in reasonable time, and by proper amendment, make Ray a party in a proper manner, his bill ought to be dismissed so far as it claims to set up the undivided half of the tract, without prejudice to a future suit for the same cause.
It is error to take a decree against infant defendants before appointing a guardian ad litem.
By the next error assigned, it is insisted that the court erred, after the order of revivor was made, in proceeding against the heirs of May, some of whom are acknowledged to be infants, without having appointed a special guardian for the purpose of defending the suit in their behalf. On examining the record, it does appear that such, is the state of the fact. The order reviving concludes with these expressions—“by Vincent Davis, their guardian.” To suppose him to be the guardian, ad litem, is what the record does not warrant, for he is no where appointed, nor does it appear he ever acted as such. It was, therefore, erroneous to proceed against the infants till such appointment was made.
The next question which presents itself by the assignment of error, is contained in a bill of exceptions to the opinion of the court, which admitted five depositions of Stephen Viletta, taken in the cause, because that he had been re-examined contrary to chancery principles. The practice in this country in taking depositions generally is loose, indeed, and great latitude is given by legislative provisions, which are still more liberally construed by litigants.
But however wide a range the legislature may have allowed, they have no where altered the rules of equity with regard to the re-examination of witnesses. These rules are not based on a particular practice, or adapted, like those of an artificial character, to the customs of the courts of England, and therefore inapplicable elsewhere. Their foundation is sound reason, aided by experience, and applicable to the condition of man in every government and country. The history of judicial proceedings, especially *236 in courts of chancery, frequently affords examples of willing witnesses with elastic and expanding consciences, determined to go all lengths to establish completely the cause of action in defence of their favorites, who call upon them to depose. As the suit in chancery progresses, the testimony of each side is discovered. If one has gained an advantage in proof or disproof, the other well knows that he must prove more, or fail. To do this, he will again resort to his former witnesses, who are willing to be moulded to his purposes, and from that store obtains sufficient supplies to defeat his adversary. Hence the rules inequity, that the same witness should seldom or never be re-examined on the same facts, and never as to other facts, without application to do so, and leave of the court first had and obtained for that purpose. In the present case no leave of court to re-examine the witness in question appears of record; and the reading of his second depositions, to the number of five, was objected to on the trial, and the objection overruled by the court, and the testimony admitted. The contents of the depositions excite a strong suspicion that the facts detailed are first shaped, and reshaped in language more suitable to the cause of the party who called him. At one time he identifies objects at a particular date; at another he renders them notorious at a previous date, until nothing is wanting to ensure success to the party who called him. In such case, the rule which forbids re examination, without special leave first had and obtained for that purpose, ought to have been applied, and all his depositions, taken on re-examination without leave, ought to have been rejected. For these reasons the decree of the court below must be reversed, and as the result of this opinion, is, that the cause could not, at the time, be tried on its merits, this court forbear to add anything on those points, which affect the merits of the decree.
No second deposition of a witness ought to be taken and used in the same suit without leave of the court
Some difficulty, however, has presented itself to the court with regard to the defendant, Newman, on account of the singular attitude which he occupies in the cause. He was no party to the bill, and nothing in the bill or answers of the other defendents shewed that he had any interest in the subject matter. He however has presented his answer, and on his motion, is admitted a defendant in the suit,” without the consent of the complainant, who excepted to the proceedings. The cause progressed, and a decree was rendered against him, and the difficulty of relieving him *237 has arisen, because, by an irregular and anomalous proceeding, he has placed himself in the predicament in which he is: For this court is aware of no rule or practice in chancery, which allows defendants to be made on their motion only, as is practised in ejectments in courts of common law. But as the court is bound to reverse the cause for erroneous proceedings anterior to his admission, it measurably relieves us from the difficulty. However, as future difficulty may arise on the account of his attitude, this court cannot avoid suggesting the expediency of allowing him to go out of the controversy, if he should elect to do so—or if he does not, permitting him to shew to the court that his interest will be so materially affected, that no decree ought to be rendered unless he is made a party. In which case the court might enjoin the complainant from proceeding, or dismiss his bill without prejudice, unless by proper amendment he shall make Newman a defendant, and allow his interest to be made the subject matter of adjudication.
Hardin for appellant, B. Hardin for appellee.
The decree of the court below must be reversed, with directions to proceed according to this decree.